UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JACQUELINE WEGNER, et al., | Case No. 2:17-CV-1429 JCM (PAL) |
| Plaintiff(s), | ORDER |
| v. | |
| WELLS FRGO BANK NATIONAL ASSOCIATION, et al., | |
| Defendant(s). | |

Presently before the court is a motion to dismiss filed by individual defendants Carrie Tolstedt ("Tolstedt"), John Stumpf ("Stumpf"), Pamela Conboy ("Conboy"), Claudia Russ Anderson ("Anderson"), Matthew Raphaelson ("Raphaelson"), and James M. Strother ("Strother"). (ECF No. 57). Plaintiff Jacqueline Wegner ("Wegner") filed a response (ECF No. 88), to which the individual defendants replied (ECF No. 90).

Also before the court is defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") motion to dismiss. (ECF No. 60). Plaintiff filed a response (ECF No. 86), to which Wells Fargo replied. (ECF No. 91).

**I.     Facts**

The instant action involves purported violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act and a defamation claim stemming from allegedly fraudulent and abusive business tactics that Wells Fargo personnel in Henderson, Nevada, performed while carrying out the policies of the bank's headquarters in San Francisco, California. (ECF No. 1).

Between June and October of 2013, plaintiff's 96-year-old grandmother, Ms. Ronile Russell ("Ms. Russell"), withdrew nearly $500,000 from personal accounts at Citibank and

Morgan Stanley, depositing the money into a newly opened account at a Wells Fargo branch in Henderson. (ECF No. 2 at 22-23). Plaintiff had been the beneficiary on the Morgan Stanley account, and her estranged daughter, Paige Wegner ("Paige"), was the listed beneficiary on the Wells Fargo account. *Id.* at 23.

On August 6, 2014, plaintiff flew to Nevada after expressing concern over her mother's "confused cognitive state" and potential financial exploitation by Paige. *Id.* at 26-27. Upon discovering a document in Ms. Russell's home that removed plaintiff as the beneficiary on the Morgan Stanley account, plaintiff took her mother to a Wells Fargo branch in an attempt to add herself as a signatory on the Wells Fargo checking account. *Id.* at 29-30. After Ms. Russell stated she was unsure as to why they were at the branch, the Wells Fargo banker stated he was not able to assist the pair, citing Nevada's elder abuse laws. *Id.* at 30. That same day, plaintiff twice attempted the same transaction and was unsuccessful. *Id.* at 31.

Two days later, plaintiff accompanied her mother to Morgan Stanley, where a banker confirmed that the form changing the beneficiary on the account from plaintiff to her granddaughter, Paige, had "expired." *Id.* at 32. Following the visit to Morgan Stanley, Ms. Russell went to a Wells Fargo branch and instructed the bank to transfer the remaining $373,705.18 in her savings account to her checking account. *Id.* at 33-34.

After returning to Ms. Russell's home, plaintiff suggested her mother write a check for $300,000 made payable to "Morgan Stanley." *Id.* at 34. Plaintiff further asked Ms. Russell to write her a check for $65,000 so plaintiff could open a joint account in both their names. *Id*. Ms. Russell complied with both requests. *Id*. Subsequently, plaintiff deposited the $65,000 check into her personal Bank of America account. *Id*. On August 11, 2014, plaintiff took the $300,000 check written by her mother to Morgan Stanley and had the bank deposit the funds into an account on which plaintiff was the lone beneficiary listed. *Id.* at 35.

On August 13, 2014, plaintiff examined Ms. Russell's Wells Fargo statement, noting a balance in her mother's checking account of $103,000. *Id.* at 36. Later that day, Ms. Russell allegedly wrote another check payable to plaintiff. *Id*. Plaintiff went to a Wells Fargo branch "to begin the process of opening a joint bank account for herself and her mother" with the check for

- 2 -

over $103,000. *Id.* at 36-37. The branch manager eventually told plaintiff the bank had shredded the check and notified law enforcement. *Id.* at 37.

Shortly after 3:20 p.m., two Henderson police officers arrived at Ms. Russell's home, responding to a report of exploitation of the elderly. *Id.* at 38-39. While conversing with police, Ms. Russell denied authorizing any of the previous transactions and expressed her frustration over plaintiff's continued presence in her home. *Id.* at 41. Plaintiff admitted to moving the funds out of the savings account, into the checking account, and ultimately into the Morgan Stanley account. *Id.* at 42. Plaintiff also stated she cashed the check for $65,000 and deposited it into her personal Bank of America account. *Id*. Ms. Russell indicated that she wanted to prosecute her daughter and said her daughter "was stealing money from her." *Id.* at 43.

During their search of plaintiff's purse, officers found Ms. Russell's passports, social security card, and credit cards. *Id.* at 44. The officers arrested plaintiff and booked her on three charges: burglary, possession of stolen property, and exploitation of an elderly person. *Id*. Plaintiff posted a bail bond within 48 hours of her arrest. *Id.* at 46. The district attorney dropped all charges against plaintiff two months later. *Id.* at 53. On January 1, 2015, Ms. Russell passed away at the age of 98. *Id.* at 54-55. In July of 2016, the Nevada probate court discharged plaintiff from all further duties and responsibilities as administratrix of Ms. Russell's estate, declaring it "settled and closed." (ECF No. 60 at 6).

On May 19, 2017, plaintiff filed her complaint, asserting four claims under RICO pursuant 18 U.S.C. § 1962(a)-(d) and one claim for defamation. (ECF No. 1). In the complaint, plaintiff alleges that "the insatiable greed of [e]nterprise participants resulted in [her] languishing in jail due exclusively [due] to the defamatory *per se* falsehoods of Wells Fargo personnel." *Id.* at 5. According to the plaintiff, this alleged defamatory conduct sullied her reputation and served as a catalyst for not only the loss of her home, but also the death of her mother. *Id*. at 36.

The individual defendants, all of whom held high-ranking positions at Wells Fargo headquarters in San Francisco or at a regional branch in Arizona, move to dismiss for lack of personal jurisdiction. (ECF No. 57). Wells Fargo moves to dismiss for failure to state a claim

upon which relief can be granted. (ECF No. 60). The court will address defendants' arguments as it sees fit.

**II.     Legal Standard**

   *a.     Personal jurisdiction*

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss for lack of personal jurisdiction. To avoid dismissal under Rule 12(b)(2), a plaintiff bears the burden of demonstrating that its allegations would establish a prima facie case for personal jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Courts accept allegations in a plaintiff's claim as true and should construe factual disputes in the plaintiff's favor. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

Personal jurisdiction over a defendant is proper when the law provides for jurisdiction and the exercise of jurisdiction comports with notions of due process. *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 134 S.Ct. 746, 753 (2014). Nevada has authorized its courts to exercise jurisdiction over persons "on any basis not inconsistent with . . . the Constitution of the United States." Nev. Rev. Stat. § 14.065.

Due process requires the defendant have at least "minimum contacts" with the forum state so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Walden*, 134 S.Ct. at 1126.

In analyzing whether a defendant has a sufficient connection with the forum state, courts distinguish between general and specific jurisdiction. *See Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 n.8-9 (1984). General jurisdiction is appropriate where a defendant's activities in the forum state are so "substantial" or "continuous and systematic" that the defendant is essentially at home in the forum state. *Daimler*, 134 S.Ct. at 754. "This is an

James C. Mahan
U.S. District Judge

- 4 -

exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

If a court does not possess general jurisdiction over an individual, it still may exercise specific jurisdiction if the defendant has sufficient minimum contacts with the forum state in relation to the cause of action. Specific jurisdiction allows a court to hear claims that arise out of a defendant's "purposefully directed" activities in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The Ninth Circuit has established a three-prong test for determining specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

The plaintiff bears the burden of satisfying the first two prongs. *Id*. Accordingly, if the plaintiff fails at the first step, the jurisdictional inquiry ends and the court must dismiss the case. *Boschetto*, 539 F.3d at 1016. If a plaintiff meets this burden, a defendant hoping to defeat jurisdiction must show that the exercise of jurisdiction is unreasonable. *Schwarzenegger*, 374 F.3d at 802.

The Ninth Circuit "often uses the phrase 'purposeful availment,' in shorthand fashion, to include both purposeful availment and purposeful direction, but availment and direction are, in fact, two distinct concepts." *Id*. The purposeful-availment analysis is appropriate for claims sounding in contract, while the purposeful-direction analysis is appropriate for claims sounding in tort. *Id.*

The plaintiff cannot be the defendant's only connection to the forum state. *Walden*, 134 S.Ct. at 1122. "[I]t is the defendant's conduct that must form the necessary connection with the

forum [s]tate that is the basis for its jurisdiction over him." *Id.* (citing *Burger King*, 471 U.S. at 478).

### b. *Failure to state a claim*

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Consequently, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, the court must dismiss the plaintiff's claim. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

James C. Mahan
U.S. District Judge

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### III. Discussion

#### *a. Personal jurisdiction*

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). When meeting this burden, the plaintiff cannot "simply rest on the bare allegations of [the] complaint." *Schwarzenegger*, 374 F.3d at 800 (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

The individual defendants argue that the court cannot exercise personal jurisdiction over them. Plaintiff's response asserts the validity of exercising personal jurisdiction over the individual defendants and notes that 18 U.S.C. § 1965 confers nationwide jurisdiction in a civil RICO action. (ECF No. 88 at 6).

##### *i. General jurisdiction*

A plaintiff must meet an "exacting standard" to establish that defendants have continuous and systematic affiliations with the forum state. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1074 (9th Cir. 2011); *see Daimler*, 134 S.Ct. at 754. An individual's domicile serves as the paradigm forum for the exercise of general jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

Plaintiff's complaint and RICO case statement offer a dearth of evidence as to why the court should exercise general jurisdiction over the individual defendants. Plaintiff's complaint omits any mention of the individual defendants' domiciles and their ties to Nevada. To cinch the matter, the RICO case statement notes that the individual defendants' primary location is either "within [Wells Fargo's] headquarters in San Francisco, California" or in Arizona. (ECF No. 2 at

2, ECF No. 1 at 8). These meager ties to the forum state are not sufficient for the court to exercise general jurisdiction over the individual defendants. *See Daimler*, 134 S.Ct. at 754.

    *ii.*  *Specific jurisdiction*

Plaintiff bears the burden of establishing the first two prongs of the Ninth Circuit test for specific jurisdiction. *Schwarzenegger*, 374 F.3d at 802. For the sake of brevity, the court will focus on the second prong: whether the claim arises out of or relates to the defendant's forum-related activities.

The Ninth Circuit applies a "but for" test to determine whether a claim arises out of a defendant's forum-related activities. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). A brief analysis of plaintiff's allegations as they relate to the individual defendants' conduct shows a lack of the requisite nexus to engender personal jurisdiction.

Plaintiff alleges that Tolstedt, the former senior vice president in charge of community banking for Wells Fargo, bore responsibility for instituting "sales goals connected with cross-selling." (ECF No. 1 at 16). Plaintiff fails to establish how such a practice relates to the harms alleged in her complaint. Specifically, plaintiff cites her chief harms as destruction of her reputation and spending time in jail. *Id.* at 37. Plaintiff's argument that her "languishing in jail" derived from Tolstedt's actions in San Francisco requires a multitude of leaps in deductive reasoning that are simply not plausible to make.

Plaintiff relies on the Congressional testimony of Stumpf, the former chairman and chief executive officer of Wells Fargo, to allege he "enabled" the RICO enterprise to "spread and prosper." (ECF No. 2 at 5). However, plaintiff never alludes to Stumpf's conduct as it related to her own decision to open a Wells Fargo account in Nevada. Plaintiff fails to sufficiently allege that but for Stumpf's Nevada-related conduct she would not have suffered injury. *See James Malinchak Int'l, Inc. v. Suzanne Evans Coaching*, No. 2:16-CV-89 JCM (CWH), 2016 WL 5796854, at *5 (D. Nev. Sept. 30, 2016).

Similar logic applies when considering the actions of the remaining four individual defendants. Plaintiff does not sufficiently plead facts to demonstrate how Conboy's applying "intense sales pressure" as former regional banking leader in Arizona caused plaintiff's alleged

injuries. (ECF No. 2 at 12). Even accepting plaintiff's allegations as true, the facts never indicate that Anderson, Raphaelson, and Strother, all of whom held similarly high-ranking corporate positions at Wells Fargo, had any connection to the allegations in the complaint. The RICO and defamation claims arose from allegedly defamatory statements made to police by branch employees in Nevada. (ECF No. 1 at 4-5). As plaintiff's claim does not arise out of the individual defendants' activity in the forum, it fails to meet the second prong of the Ninth Circuit test. *See Schwarzenegger*, 374 F.3d at 802. Accordingly, the court will dismiss the claims against the individual defendants for want of jurisdiction.[1] *See id*.

### iii. Nationwide jurisdiction in civil RICO actions

In her response, plaintiff contends that 18 U.S.C. § 1965(a) confers jurisdiction over the individual defendants. (ECF No. 88 at 6). This statutory provision grants personal jurisdiction over an individual defendant in a civil RICO case to the district court for the district in which that person has an agent or transacts affairs. 18 U.S.C § 1965(a). A plaintiff can bring a civil RICO action in a district court when basing personal jurisdiction on minimum contacts after a plausible allegation as to at least one defendant. *Id*. However, merely naming persons in a RICO complaint is not sufficient to subject individuals to RICO's nationwide service provisions. *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986).

The Ninth Circuit has implemented a three-prong test to determine a valid exercise of nationwide service under this statute. *Id*. A satisfactory and valid assertion of nationwide service occurs when (1) the court has personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy, (2) there is no other district in which the court will have personal jurisdiction over all of the alleged co-conspirators, and (3) plaintiffs properly allege a "multidistrict conspiracy" that encompasses the individual defendants. *Id*.

---

[1] Further, plaintiff never alleges that any of the individual defendants purposefully directed their conduct towards Nevada. Even if plaintiff could establish that the individual defendants directed their conduct at her and knew she was a Nevada resident, the court would not be able to exercise personal jurisdiction absent defendants' express aiming of tortious conduct at the forum state. *See Bellagio, LLC v. Bellagio Car Wash & Express Lube*, 116 F. Supp. 3d 1171-72 (D. Nev. 2015) (Mahan, J.).

Individual defendants claim the statute does not apply to the instant action. (ECF No. 90 at 2). The court agrees, as plaintiff has failed to demonstrate a prima facie showing of personal jurisdiction over any of the individual defendants. Therefore, plaintiff does not satisfy the first prong of the Ninth Circuit test. *See Butcher's Union*, 788 F.2d 535 at 539.

### b. *Defamation*

In her complaint, plaintiff alleges defamation *per se* against Wells Fargo pursuant to California law. (ECF No. 1 at 5). Courts in this district have held that in an action for defamation, the local law of the state where the defamatory act occurs generally controls. *See, e.g., Nautilus Ins. Co. v. Access Med., LLC*, No. 2:15-cv-00321-JAD-GWF, 2016 WL 5429650, at *4 (D. Nev. Sept. 27, 2016). Here, Wells Fargo branch employees in Henderson, Nevada made the allegedly defamatory statements to the Henderson police department. (ECF No. 2 at 38-40). Therefore, Nevada law controls.[2]

The statute of limitations for bringing a defamation claim in Nevada is two years.[3] Nev. Rev. Stat. § 11.190(4)(c). The source of plaintiff's defamation claim is an allegedly false police report made on August 13, 2014. (ECF No. 2 at 36-45). Plaintiff filed the complaint on May 19, 2017, outside the statutory period. (ECF No. 1).

Plaintiff claims she is entitled to tolling, suggesting that "[i]t is only within the past few months . . . that [t]he [e]nterprise tactics even became known . . . ." *Id.* at 37 (emphasis omitted). As Wells Fargo adequately argues, plaintiff cannot dispute her awareness of the allegedly defamatory report of suspected elder exploitation in 2014 that culminated in her arrest. Pursuant to Nevada's statute of limitations, the court must dismiss plaintiff's defamation claim against Wells Fargo. *See* Nev. Rev. Stat. § 11.190(4)(c).

### c. *RICO claims*

Plaintiff asserts violations of 18 U.S.C. § 1962(a) – (d) in her complaint and accompanying RICO case statement. (ECF Nos. 1-2). Section (a) prohibits any person from using money derived

---

[2] Plaintiff does not provide a colorable argument to support her dubious claim that California defamation law should apply.

[3] The statute of limitations for bringing a defamation claim in California is one year. Cal Civ. Proc. Code § 340(c).

James C. Mahan
U.S. District Judge

- 10 -

from a pattern of racketeering activity to invest in an enterprise. 18 U.S.C. § 1962(a). Section (b) bars an individual from gaining control of an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(b). Section (c) forbids any person from conducting an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(c). Section (d) is a general prohibition of persons conspiring to violate Sections 1962(a) – (c). 18 U.S.C. § 1962(d). Plaintiff argues that Wells Fargo's alleged RICO violations of mail fraud, wire fraud, money laundering, transport of stolen property, and bank fraud forced her to incur legal fees or forgo employment opportunities. (ECF No. 1 at 11).

A successful claim in a civil RICO action must allege each of the requisite elements to state a violation of a particular section, and must "show that a RICO predicate offense 'not only was a 'but for' cause of [the] injury, but was the proximate cause as well.'" *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010). A plaintiff must plausibly allege a pattern of racketeering activity for each potential RICO violation he brings forth. *See United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014). Here, plaintiff fails to adequately allege RICO violations, as defamation is not a predicate offense pursuant to RICO and there is no specific evidence that Wells Fargo caused her injury as a result of any supposed wrongdoing.

        *i.     Predicate acts under RICO*

Courts often use the terms "racketeering" and "predicate acts" synonymously in cases arising out of purported RICO violations. *Beck v. Prupis*, 529 U.S. 494, 497 (2000). 18 U.S.C. § 1961(1) contains a definitive list of predicate acts recognized under the RICO statute. *Id.* at 497 n.2; 18 U.S.C. § 1961(1).

The foundation of plaintiff's first cause of action, a violation of 18 U.S.C. § 1962(b), is alleged injuries occurring "as a direct result of [d]efendants' defamation *per se*." (ECF No. 1 at 30). Plaintiff's complaint further alleges that "the insatiable greed of [e]nterprise participants resulted in [p]laintiff . . . languishing in jail due exclusively to the defamatory *per se* falsehoods of Wells Fargo personnel." *Id.* at 5.

Under 18 U.S.C. § 1961(1), defamation is not a predicate act. 18 U.S.C. § 1961(1). In its motion, Wells Fargo appropriately cites cases within this circuit that have interpreted the statutory provision on its face. (ECF No. 60 at 15); *see Ritchie v. Sempra Energy*, No. 10-cv-1513-CAB (KSC), 2013 WL 12171757, at *4 n.2 (S.D. Cal. Oct. 15, 2013) ("It is well-established that defamation does not meet the definition of a RICO predicate act."); *Marks v. City of Seattle*, No. C03-1701, 2003 WL 23024522, at *6 (W.D. Wash. Oct. 16, 2003) (dismissing RICO claim based on allegations of defamation and invasion of privacy because the acts alleged by plaintiffs were not predicate acts within § 1961(1)). Accordingly, the court must dismiss plaintiff's first cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6).

### ii. Acts of fraud and the Rule 9(b) standard

Predicate acts premised upon fraudulent conduct must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991). For RICO claims, Rule 9(b) "requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Id*. "Any averments which do not meet that standard should be 'disregarded,' or 'stripped' from the claim for failure to satisfy Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

The elements of wire or mail fraud are: (1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010). Mail and wire fraud allegations are vague and conclusory when they fail to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Desoto v. Condon*, 371 F. App'x. 822, 824 (9th Cir. 2010). This court has previously dismissed a civil RICO claim where the "plaintiff fail[ed] to show with any specificity that the defendants engaged in racketeering or caused her injury as a result of any alleged wrongdoing." *Clingman v. Somy*, No. 2:10-cv-1834-JCM (LRL), 2011 WL 383951, at *4 (D. Nev. Feb. 3, 2011).

Here, the remaining statutory violations in plaintiff's complaint all sound in fraud: 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 2314 (transport and receipt of money "by means of false or fraudulent pretenses"), and 18 U.S.C. § 1344 (financial institution fraud). (ECF No. 1 at 21-26). Therefore, Rule 9(b)'s heightened pleading standard applies.

Plaintiff's prolix complaint is devoid of specific, factual allegations of fraud, thus failing to meet the requisite level of particularity required by Rule 9(b). The complaint does not point to a single communication made by Wells Fargo via mail or wire and never alleges facts regarding proceeds from illegal business conduct. Plaintiff whimsically justifies her allegation that Wells Fargo violated the federal bank statute by claiming it executed a scheme to defraud its own creditors and lenders. *Id.* at 25. Here, as in *Clingman*, plaintiff's complaint does not contain allegations sufficient to state a claim upon which relief can be granted. *See Clingman*, 2011 WL 383951, at *4.

### IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the individual defendants' motion to dismiss (ECF No. 57) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that defendant Wells Fargo's motion to dismiss (ECF No. 60) be, and the same hereby is, GRANTED.

The clerk shall enter judgment and close the case.

DATED June 25, 2018.

                                                    */s/ James C. Mahan*
                                          UNITED STATES DISTRICT JUDGE